Walters, J.
The question raised is whether or not the contract between Orebaugh and the Ford Motor Company is against public policy, monopolistic in its tendencies, and in violation of the Sherman anti-trust law.
The former contract of the Ford Motor Company was under consideration by the district court of the United States for the southern district of Ohio, western division, in cause No. 2174, Ford Motor Company v. The Union Motor Sales Company et al.,* and Judge Hollister held in the opinion that the contract of the Ford Motor Company then existing and under consideration by the court was monopolistic, against public policy, and came within the provisions of the Sherman anti-trust law.
Whether or not the contract now under consideration, or the contract under consideration by Judge Hollister, is a contract which the Ford Motor *408 Company had a right to make with its agents depends upon whether or not the contract provides for the sale of the machines to the agents — whether or not the title to the machines vests in the agent.
After the above decision the attorneys for the Ford Motor Company drew up another contract, which they attempted to take out of the provisions of the decision of Judge Hollister. As to whether or not they have done so is the principal question in this case.
Judge Hollister held that a patentee, when he sold his machines to a vendee and received the full purchase price therefor as such patentee and manufacturer, could not dictate the price at which his agent or vendee should sell the article; that under the patent laws of the United States when a man receives a patent, the object is to give him a monopoly, he may manufacture and sell direct for such price as he may fix, and is protected by the law and his patents, but that when he sells to an agent or other person and receives the full price he asks for the article and all he expects to receive, he can not say to the vendee or agent that he must sell it for a certain price. That is the limit of the protection afforded him by the patent laws of the United States.
Mr. Orebaugh’s contract was under the new form of contract provided by the Ford Motor Company, and if its terms withhold the title in the Ford Motor Company, and the agent has the right only to solicit purchasers for the Ford Motor Company and has no right to give complete title to the purchaser except by bill of sale signed by the Ford *409 Motor Company, it seems to us the Ford Motor Company is selling the machine direct through its agent, that Orebaugh was simply a soliciting agent for the Ford Motor Company, and that no title passed when Orebaugh secured a purchaser for one of the machines, until the Ford Motor Company executed a bill of sale.
Let us examine some of the provisions of this new contract.
The preamble states: “Whereas the second party has applied to the first party to be the agent in certain territory hereinafter described, for the sale of said Ford automobiles and parts, and the first party is willing to appoint second party, with certain limited authority and upon the following terms and'conditions only:” etc.
Condition No. 1 recites: “That first party hereby appoints the second party its ‘Limited Agent’, with certain authority as herein expressly stated only, for the purpose of negotiating sales of first party’s products to users only in the methods and upon the terms and within the territory herein specifically set forth.”
Condition No. 2 is as follows: “That second party shall have no authority or power or duty whatsoever, except as herein expressly conferred.”
Condition No. 3 is as follows: “That first party will consign its Ford automobiles to second party to be sold to users only, and not for re-sale upon bills of sale to be executed by the first party only, as hereinafter provided.”
Condition No. 6 states: “Second party shall arrange for sales of Ford automobiles * * *410 And in condition No. 7 we find the term: “Second party shall arrange all sales * * * .”
Condition No. 9 provides: “The first party may change the list price of any of its products at any time it may choose * * *
Condition No. 10 sets forth the second party’s lien, stating that he shall advance in cash 85 per cent, of the full list price of cars at the time of the consignment; and in condition No. 11 the word “consignment” is also used.
Condition No. 13 is as follows: “First party shall retain all and complete title to each automobile until actual bill of sale, signed and executed by first party, or one of its factory branch managers, has been delivered to the vendee, who shall be only a user; that is, one who has purchased for immediate use and not for re-sale the Ford automobile, at full advertised list price, plus freight and delivery charges, and without rebate, donation or drawback of any character whatsoever. And any attempt to sell or dispose of or deliver any Ford automobile at less than such price shall be utterly void and shall pass no title whatsoever.”
Condition No. 14 specifically gives the second party a lien on each Ford automobile consigned to him, for the 85 per cent, advanced by him on the sale.
The consignee or limited agent could have no lien upon his own property.
Condition No. 15 states: “Second party will make no arrangements for the sale of a Ford automobile without taking such written signed order * *
*411 Condition No. 17 is as follows: “The dealings of the second party with a proposed purchaser of an automobile or the taking of a signed order blank as herein required or a deposit or both, shall not constitute a sale, nor shall first party be bound to accept such order, * * *. ”
Condition No. 19 states: “Second party shall have no authority to make any warranty whatsoever of Ford automobiles * *
Warranty is an incident of ownership.
Condition No. 21 provides: “In case of damages to automobiles by carriers in transit to second party collection from the carrier shall be made in the name of the first party as the owner of such automobiles * * *.”
In condition No. 23 second party guarantees to save first party harmless from theft and damage of any kind to Ford automobiles while in his possession under consignment.
In condition No. 25 second pai-ty agrees to display signs and otherwise advertise as a limited agent for Ford cars, and thus establish himself with the public as being simply an intermediate agent between the seller and buyer, or, in other words, a means of communication.
Condition No. 32 is as follows: “The first party hereby expressly reserves to itself the right to make direct sales to customers in the territory above described, and in such case will pay to the second party five per cent (5$) of the list price of the automobile or automobiles so sold, after it shall have received the full purchase price in cash. This shall not include sales of parts or accessories, which are otherwise provided for herein.”
*412 Condition No. 43 again reserves the right in the first party to change the price of the car at any time, and even after requisitions and deposits are accepted.
All of these provisions, and each and every one of them, are made in this contract with the intent on the part of the contracting parties that the first party shall retain the title and ownership of all automobiles until the limited agent has secured a purchaser, and, then, not until the first party executes a bill of sale to the purchaser is the sale complete.
The first party reserves to itself the right to make sales in the territory, and provides that the second party shall not warrant any of the automobiles. If he owned them he could do as he pleased with them. The second party can make all the arrangements he pleases for a sale, but, in the contract, the Ford Motor Company reserves the right to make the sale by executing a bill of sale. The contract speaks of the second party making arrangements for the sale. Condition No. 13 provides that the Ford Motor Company “shall retain all and complete title to each automobile until actual bill of sale [is] signed and executed by first party * * Condition No. 9 gives the right to the first party to change the list price of any of the products. That is an index of ownership.
We do not decide whether the relation between the automobile company and the limited agent is that of bailor or • bailee. But whatever the relation is, as evidenced by this contract, it may be *413 termed, as it is in the contract, one of limited agency.
We are constrained to believe that what we have quoted of this new contract steers clear of the objections in the old contract pointed out in the opinion of Judge Hollister, as each of the paragraphs quoted from the new contract shows distinctly that the Ford Motor Company has simply given the right to its limited agents to procure purchasers; in other words, as is said in the contract, to arrange for the sale. The company really makes the sale itself after the agent acts as a solicitor in procuring a purchaser. The Ford Motor Company manufactures these automobiles under its different patents issued by the United States, and under this contract it sells them directly through an agent. That it has a right to do, and is protected by its patents in fixing whatever price it chooses so long as the title is not vested in the limited agent.
Having concluded the main issue in this case, and having found that the contract is a valid one, is not against public policy, is not monopolistic, and is not within the provisions of the Sherman antitrust law, and that the patentee of these articles was discharging only his own legal rights protected by the patents, we now come to the question of the liability of the defendant to plaintiff under the contract of dissolution between them.
It is stated in the amended petition, and in the language used in the contract of dissolution, that Neu had explicit knowledge of all the clauses in the contract of Orebaugh with the Ford Motor Company, and that he agreed in the contract of dissolu *414 tion that he would sell all cars in accordance with the terms of the contract between the Ford Motor Company and W. H. Orebaugh. Now neither Orebaugh nor his partner, according to our finding, had any title to any of the cars. Therefore, Orebaugh could confer no title by selling the cars to Neu, and in fact there was not a sale — there was a dissolution of the partnership and a division of the assets of the partnership between them upon amicable terms. But Neu, in violation of his contract of dissolution and in violation of the Ford Motor Company contract, of which he knew, as is alleged in the amended petition, sold machines in Scioto county, which he well knew he had no right to do, and he knew at the time that selling machines outside of the territory limited in the Ford Motor Company contract would make Orebaugh liable for $250 for each machine so sold. Orebaugh says he has paid the damages to the agent of Scioto county, through the Ford Motor Company, and he now asks that Neu, for a flagrant violation of his contract, pay to him the damages he has sustained thereby. If this was not fraud on the part of Neu, when he had knowledge of the Ford Motor Company’s contract,, and its provisions against selling outside of certain territory, and the penalty attached to Orebaugh for so doing, it certainly nearly amounts to fraud. For such a violation of the terms of the partnership contract of dissolution and the Ford Motor Com-pany’s contract, knowing of the damage that would result to Orebaugh, it seems to us that Orebaugh can maintain an action against Neu.
*415 The judgment of the court below is reversed, cause remanded, and the court instructed to overrule the demurrer to the amended petition.
Judgment reversed, and cause remanded.
Sayre and Middleton, JJ., concur.

225 Fed. Rep., 373. — Reporter.